UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------------------------------X

Romel Hernandez,

                        Plaintiff,                    **DECISION AND ORDER**

      -against-                                    20-cv-498 (AEK)

Ultra Shine Car Wash, Inc. et al.,

                       Defendants.
---------------------------------------------------------------X

**THE HONORABLE ANDREW E. KRAUSE, U.S.M.J.**[1]

      Plaintiff Romel Hernandez ("Plaintiff") commenced this action on January 20, 2020 on behalf of himself and all other persons similarly situated, asserting claims against Defendants Ultra Shine Car Wash, Inc. and Adelino Pastilha ("Defendants") for violations of the Fair Labor Standards Act ("FLSA") and New York Labor Law ("NYLL") based on Defendants' alleged failure to pay the minimum wage, overtime wages, and spread of hours pay, failure to provide wage notices or weekly wage statements, and unlawful tip retention.  ECF No. 1.

      On February 3, 2021, Plaintiff filed a motion seeking to conditionally certify an FLSA collective action and to permit a notice to be issued to all persons similarly situated.  ECF No. 28.  Following a status conference during which counsel for Defendants confirmed that Defendants did not oppose the motion, the Court granted the motion and authorized the mailing of the collective action notice.  ECF No. 29.  There were no responses to the collective action notice; accordingly, Plaintiff continued to litigate this matter solely on behalf of himself.

---

[1] The parties have consented to the Court's jurisdiction pursuant to 28 U.S.C. § 636(c).  ECF No. 37.

Before the Court is the parties' application for approval of a settlement agreement in accordance with *Cheeks v. Freeport Pancake House, Inc.*, 796 F.3d 199 (2d Cir. 2015). ECF No. 40 ("*Cheeks* Letter"). For the reasons that follow, the Court APPROVES the settlement agreement.

## DISCUSSION

In the Second Circuit, "parties cannot privately settle FLSA claims with a stipulated dismissal with prejudice under Federal Rule of Civil Procedure 41 absent the approval of the district court or the [United States] Department of Labor." *Fisher v. SD Prot. Inc.*, 948 F.3d 593, 599 (2d Cir. 2020). Thus, a district court in this Circuit must review a proposed FLSA settlement and determine whether it is fair and reasonable. *See, e.g.*, *Cronk v. Hudson Valley Roofing & Sheetmetal, Inc.*, No. 20-cv-7131 (KMK), 2021 WL 38264, at *2 (S.D.N.Y. Jan. 5, 2021). When reviewing a proposed settlement agreement in an FLSA case, district courts consider the "totality of circumstances," *Wolinsky v. Scholastic, Inc.*, 900 F. Supp. 2d 332, 335 (S.D.N.Y. 2012), to assess whether the agreement is fair and reasonable, including the following factors:

> (1) the plaintiff's range of possible recovery; (2) the extent to which the settlement will enable the parties to avoid anticipated burdens and expenses in establishing their respective claims and defenses; (3) the seriousness of the litigation risks faced by the parties; (4) whether the settlement agreement is the product of arm's-length bargaining between experienced counsel; and (5) the possibility of fraud or collusion.

*Fisher*, 948 F.3d at 600 (quoting *Wolinsky*, 900 F. Supp. 2d at 335). In addition, the following factors "weigh against approving a settlement":

> (1) the presence of other employees situated similarly to the claimant; (2) a likelihood that the claimant's circumstance will recur; (3) a history of FLSA non-compliance by the same employer or others in the same industry or geographic region; and (4) the desirability of a mature record and a pointed determination of the governing factual or legal issue to

> further the development of the law either in general or in an industry or in a workplace.

*Wolinsky*, 900 F. Supp. 2d at 336 (quotation marks omitted).  "[T]here is a strong presumption in favor of finding a settlement fair, as the Court is generally not in as good a position as the parties to determine the reasonableness of an FLSA settlement." *Xiao v. Grand Sichuan Int'l St. Marks, Inc.*, No. 14-cv-9063, No. 15-cv-6361 (RA), 2016 WL 4074444, at *2 (S.D.N.Y. July 29, 2016) (quotation marks omitted).

Having reviewed the parties' submissions in support of the proposed settlement, having presided over the settlement conference in this matter at which the parties reached agreement to resolve the case—a process that involved extensive discussion about the merits of the case with counsel and with the parties themselves—and having considered the totality of the circumstances, the Court finds that the parties' settlement agreement is fair and reasonable.

All five *Wolinsky* factors weigh in favor of approval.  First, the settlement agreement provides for a total settlement payment of $52,500, with $33,963.10 payable to Plaintiff and $18,536.90 payable to Plaintiff's counsel as attorneys' fees and costs.[2]  Plaintiff asserts that if he were to prevail at trial on all of his claims, he would receive a total of approximately $83,200 in damages—$58,000 in actual and liquidated minimum wage and overtime damages under the FLSA and NYLL, $8,200 in actual and liquidated damages for spread of hours violations, $7,000 in actual and liquidated damages for unlawfully retained tips, and $10,000 for Defendants' failure to provide wage notices or accurate paystubs under the Wage Theft Prevention Act.  ECF No. 40 at 2.  The settlement amount payable to Plaintiff constitutes approximately 41 percent of

---

[2] The bases for these figures were set forth by Plaintiff's counsel in an *ex parte* letter and detailed tables submitted to the Court in advance of the October 6, 2021 settlement conference and discussed with the Court during that conference.

3

the total amount to which Plaintiff claims that he would have been entitled had he prevailed at trial, and more than 100 percent of his total alleged (non-liquidated) damages for minimum wage, overtime, and spread of hours violations.[3]  This percentage of recovery is consistent with or greater than recovery amounts in other FLSA cases in this District where courts have approved settlement terms.  *See, e.g.*, *Santos v. YMY Mgmt. Corp.*, No. 20-cv-1992 (JPC), 2021 WL 431451, at *1 (S.D.N.Y. Feb. 8, 2021) (approving settlement where plaintiff's recovery was "approximately 18% of Plaintiff's total alleged damages and approximately 39% of his total alleged minimum wage and overtime owed," and noting that "[c]ourts in this District routinely award settlement amounts within this range.") (collecting cases); *Garcia v. Cloister Apt Corp.*, No. 16-cv-5542 (HBP), 2019 WL 1382298, at *2 (S.D.N.Y. Mar. 27, 2019) (collecting cases).

Second, the settlement will enable to parties to avoid significant additional expenses and burdens associated with establishing their claims and defenses.  While the parties have conducted some discovery to date, including several depositions, further discovery and motion practice likely would have occurred before trial here.

Third, Plaintiff would have faced significant litigation risks if this case had proceeded to trial.  Defendants assert that they possess evidence showing that Plaintiff's workday was shorter

---

[3] The *Cheeks* Letter is confusing on this point.  *See* ECF No. 40 at 3-4.  Counsel assert that the "total settlement amount" here—which includes attorneys' fees—represents (approximately) 63 percent of Plaintiff's maximum possible recovery, and proceed to contrast that figure with settlements that have been approved by other courts in this District.  *Id.*  But the cases cited in the *Cheeks* Letter follow the standard practice among courts in this District by analyzing the contemplated payment *to the plaintiff*—*i.e.*, the payment "net" of attorneys' fees and costs—rather than the total settlement amount inclusive of attorneys' fees.  *Id.*  By comparing the "total settlement amount" percentage in this case to the "net settlement amount" percentages in other cases, counsel are comparing apples to oranges and inflating the benefits of settlement to Plaintiff here.  In addition to being misleading, this exaggeration is completely unnecessary, because the net settlement amount for Plaintiff is 41 percent of Plaintiff's total alleged damages, a figure well within the range of acceptable settlement amounts.

than he claimed, including video evidence and certain payroll records, and that due to weather-related business closures, Plaintiff worked significantly fewer total hours per week on many occasions.  *See* ECF No. 40 at 2.  Plaintiff acknowledges that if the Defendants were able to persuade a finder of fact at trial with this evidence, Plaintiff might only be able to recover $20,000.  *Id.*  While Plaintiff claims that he is prepared to challenge the credibility of Defendants' evidence, he concedes that he does not have records of his own to demonstrate the hours he worked and that his damages calculation is based on his own recollections about his work history.  *Id.*  Additionally, Defendants have closed the car wash that is the subject of this suit and opened a new one in its place, which creates a potential issue of collectability for the Plaintiff.  *Id.* at 2-3.  Trial in this matter also would have presented clear litigation risks for Defendants given Plaintiff's anticipated testimony about the work he performed, and would have required a substantial outlay of attorneys' fees.  Because of the anticipated risks and costs involved in pursuing this matter through discovery and trial, settlement is an effective means of resolving the litigation for both parties.

Fourth, the Court presided over the settlement conference and therefore observed firsthand that the proposed settlement is the product of arm's-length bargaining between experienced counsel.

Fifth, the Court has no reason to believe that the proposed settlement is the product of fraud of collusion.

Moreover, a number of the factors set forth in *Wolinsky* that weigh against approving a settlement do not exist in this case.  Given that the employment relationship between Plaintiff and Defendants has ended, there is no likelihood that the circumstances that gave rise to this

5

lawsuit will recur. Additionally, the complaint in this matter does not appear to raise novel factual or legal issues that would further the development of law in this area.

However, certain of the *Wolinsky* factors potentially weigh against settlement approval—specifically the existence of similarly situated plaintiffs and the Defendants' history of FLSA non-compliance. 900 F. Supp. 2d at 336. Though no other individuals chose to join Plaintiff's lawsuit in response to the collective action notice, two other former employees of the Defendants filed an action under the FLSA and NYLL against Ultra Shine Car Wash, Inc. and Adelino Pastilha on January 29, 2020. *See Perez et al. v. Ultra Shine Car Wash, Inc. et al.*, No. 20-cv-782 (KMK), ECF No. 1. The *Perez* matter originally was filed as a collective action, but the collective action allegations were withdrawn via so-ordered stipulation before the *Perez* defendants filed their answer. *See id.*, ECF Nos. 10-11. The parties in *Perez* submitted a proposed settlement for *Cheeks* review on March 29, 2021, but the settlement was denied without prejudice for various reasons by order dated May 17, 2021. *See id.*, ECF Nos. 29, 30. A revised proposed settlement has been submitted in that case. *See id.*, ECF No. 34.

The parties in this case did not address *Perez* in their *Cheeks* Letter—the Court only learned of the existence of the *Perez* litigation upon review of the billing records submitted by Plaintiff's counsel, which included an entry describing a discussion between the two sets of plaintiffs' attorneys about potentially consolidating the cases. *See* ECF No. 40-2 at 3. The existence of the *Perez* matter should have been disclosed in the parties' proposed settlement submission for the Court's consideration. Nevertheless, given all of the other factors that weigh in favor of settlement approval, the existence of the *Perez* lawsuit is not sufficient for the Court to reject the proposed settlement here. As detailed above, the terms of this settlement are fair and reasonable for the individual Plaintiff in this action, and there are numerous reasons why

settlement of this individual lawsuit is in the best interests of the parties. Moreover, Plaintiff is the only employee affected by the settlement and dismissal of this lawsuit—other employees of the Defendants were given the opportunity to join in this lawsuit via the collective action notice, yet none chose to do so, and as such, the release of claims here applies only to Plaintiff. Meanwhile, the plaintiffs in *Perez* have been represented by counsel and are in the process of resolving their own claims. The Court is not aware of any *other* individuals who may be similarly situated to these employees who wish to pursue claims against these Defendants. *See Picorelli v. Watermark Contractors Inc. et al.*, No. 21-cv-2433 (KMK), 2021 WL 4973612, at *4 (S.D.N.Y. Oct. 26, 2021) (Court did not disapprove of settlement based on allegations in complaint regarding similarly situated individuals). Furthermore, the "history of noncompliance" factor is not directly implicated by the existence of the *Perez* lawsuit—this action and *Perez* were filed within 10 days of each other in January 2020, and the periods of employment at issue in the two cases substantially overlap. This is not a situation where Defendants previously settled one or more FLSA/NYLL lawsuits, only to appear again as defendants years later after continuing to engage in the same improper labor practices. While it is certainly relevant that Defendants faced multiple lawsuits from different employees regarding their alleged failures to comply with federal and state wage-and-hour laws, that fact does not preclude approval of the settlement of this action when weighted against all of the reasons why settlement is an appropriate and beneficial outcome for the parties here.

      The proposed settlement agreement also does not contain any problematic provisions that would preclude court approval. First, the proposed settlement agreement contains a release that is appropriately limited to "any claim regarding unpaid or improperly paid wages." ECF No. 40-1 at ¶ 2.a; *see Illescas v. Four Green Fields LLC*, No. 20-cv-9426 (RA), 2021 WL 1254252, at

7

\*1 (S.D.N.Y. Apr. 5, 2021). Second, there are no confidentiality provisions in the proposed agreement. Third, while the proposed agreement includes a non-disparagement clause, the parties maintain in their *Cheeks* Letter that the provision should be approved because it "carves out an exception for truthful statements." ECF No. 40 at 6; see ECF No. 40-1 at ¶ 8 (Plaintiff and Defendants each agree "not to make any *false* statement" about the other (emphasis added)). Courts in this district have approved non-disparagement clauses in FLSA settlement agreements that include a "'carve-out' for truthful statements about plaintiffs' experience litigating [the] case." *Cortes v. New Creators, Inc.*, No. 15-cv-5680 (PAE), 2016 WL 3455383, at \*4 (S.D.N.Y. June 20, 2016); *see Lazaro-Garcia v. Sengupta Food Servs.*, No. 15-cv-4259 (RA), 2015 WL 9162701, at \*3 (S.D.N.Y. Dec. 15, 2015). Here, the proposed "carve-out" language is even broader—not only is Plaintiff permitted to make truthful statements about his experience litigating this case, but Plaintiff is permitted to make *any* truthful statement about Defendants, because the non-disparagement clause only prohibits the parties from making *false* statements that are derogatory, disparaging, or defamatory. Accordingly, the non-disparagement clause in the proposed agreement contains sufficient allowances to permit Court approval.

With respect to attorneys' fees and costs, the proposed settlement provides for Plaintiff's counsel to receive $16,981.55 in fees as well as $1,555.35 in costs. ECF No. 40 at 4. "Courts in this District routinely award one third of a settlement fund as a reasonable fee in FLSA cases." *Santos*, 2021 WL 431451, at \*2 (quotation marks and brackets omitted). Case law in this District provides that "when awarding fees on a percentage-of-the-fund basis, the appropriate denominator is the total settlement *net* of costs." *Beckert v. Ronirubinov*, No. 15-cv-1951 (PAE), 2015 WL 8773460, at \*3 (S.D.N.Y. Dec. 14, 2015) (citation omitted) (emphasis in original). The proposed attorneys' fees amount here properly follows this approach, as one third of the

total settlement fund net of costs is exactly $16,981.55 ($52,500 - $1,555.35 = $50,944.65; $50,944.65 ÷ 3 = $16,981.55). "However, even when the proposed fees do not exceed one third of the total settlement amount, courts in this Circuit use the lodestar method as a cross check to ensure the reasonableness of attorneys' fees." *Id.* (quotation marks omitted). Appropriately, Plaintiffs' counsel has submitted contemporaneous time records and hourly rate information to substantiate the fee application. *See* ECF No. 40-2; *Fisher*, 948 F.3d at 600 ("The fee applicant must submit adequate documentation supporting the requested attorneys' fees and costs.").

Applying the lodestar method, Plaintiff's counsel spent a total of 62.6 hours on this case. David Stein, an attorney with 31 years of experience, spent 24 hours, at an hourly rate of $425; David Nieporent, an attorney with 20 years of experience, spent 38.6 hours, at an hourly rate of $325. The proposed attorneys' fee represents approximately 75 percent of the lodestar amount, which is fair and reasonable given the facts and circumstances of this case. *See Gervacio v. ARJ Laundry Servs., Inc.*, No. 17-cv-9632 (AJN), 2019 WL 330631, at *3 (S.D.N.Y. Jan. 25, 2019) ("The true lodestar amount is therefore greater than the fee award contained in the settlement agreement. As a result, the Court does not disturb the calculation of attorneys' fees . . . .").[4]

In addition, Plaintiff's counsel seeks costs of $1,555.35 and has provided payment confirmations and invoices documenting these costs. *See* ECF No. 40-3. Counsel in FLSA cases may be awarded reasonable out-of-pocket expenses that are properly substantiated. *See, e.g., Cortes*, 2016 WL 3455383, at *6 ("Court fees reflected on the Court's docket are sufficiently substantiated, as are costs for which a claimant provides extrinsic proof, such as invoices or receipts.") (citations omitted). The Court finds that the request for costs is reasonable, as the

---

[4] Because the Court finds the requested fees to be reasonable, it will not address whether rate and number of hours expended on this case, as reflected in Plaintiff's counsel's billing records, are themselves reasonable.

9

costs are sufficiently substantiated and "of the type commonly reimbursed by courts in this District." *Id.*

## CONCLUSION

For the reasons set forth above, the Court finds the proposed settlement to be fair and reasonable, and the settlement agreement as filed at ECF No. 40-1 is hereby APPROVED.

Plaintiff's counsel is to receive $18,536.90, with $16,981.55 allocated to attorneys' fees and $1,555.35 to costs. Plaintiff is to receive the balance, $33,963.10, in accordance with Paragraph 1 of the proposed Settlement Agreement and Release.

The Court will separately sign and enter the parties' proposed stipulation and order of dismissal with prejudice. *See* ECF No. 40-1 at 12.

The Clerk of the Court is respectfully directed to close the case.

Dated: January 3, 2022
White Plains, New York

**SO ORDERED.**

_____
ANDREW E. KRAUSE
United States Magistrate Judge